872 A.2d 1100 (2005)
377 N.J. Super. 350
CONNELL, FOLEY & GEISER, LLP, Plaintiff/Third-Party Defendant-Respondent,
v.
ISRAEL TRAVEL ADVISORY SERVICE, INC., a New Jersey corporation, Marilyn Ziemke, individually, and Marilyn Ziemke, as Executrix of the Estate of Ceil Shar, deceased, Defendants/Third-Party Plaintiffs-Appellants,
v.
Thomas Cosma, Esq., Third-Party Defendant/Respondent.
Connell, Foley & Geiser, LLP, and Thomas Cosma, Esq., Fourth-Party Plaintiffs/Cross-Respondents,
v.
Seyfarth, Shaw, Fairweather & Geraldson, Robert J. Mignin, Esq., Daniel J. Voelker, Esq., Christopher V. Langone, Esq., and H. Neil Broder, Esq., Fourth-Party Defendants/Cross-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 2005.
Decided May 12, 2005.
*1101 Glenn A. Bergenfield, Princeton, argued the cause for appellants.
Robert M. Vinci, Florham Park, argued the cause for fourth-party defendants/cross-appellants Seyfarth, Shaw, Fairweather & Geraldson; Robert J. Mignin, Esq.; Daniel J. Voelker, Esq.; and Christopher V. Langone, Esq. (Drinker, Biddle & Reath, attorneys; Thomas F. Campion, of counsel; Mr. Vinci and Andrew C. White, on the brief).
Gloria B. Cherry, Livingston, argued the cause for fourth-party defendant/cross-appellant H. Neil Broder, Esq. (Braff, Harris & Sukonek, attorneys; Ms. Cherry, on the brief).
James C. Orr, Newark, argued the cause for respondents/fourth-party plaintiffs/cross-respondents Connell, Foley & Geiser and Thomas Cosma, Esq. (Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys; Mr. Orr and Robert A. Berns, of counsel; Mr. Berns and Amy Bales, on the brief).
Before Judges COBURN, WECKER and S.L. REISNER.
The opinion of the court was delivered by
COBURN, J.A.D.
Plaintiff, Connell, Foley & Geiser, LLP ("Connell Foley"), sued its former clients, defendants Israel Travel Advisory Service, Inc., and its principals ("ITAS"), for legal fees incurred while acting as counsel in a trial that resulted in a verdict against ITAS of over $8 million. ITAS responded with an answer and later with a counterclaim and third-party complaint, alleging that the judgment on the verdict resulted from malpractice committed by Connell Foley and one of its partners, third-party defendant Thomas Cosma, who tried the case. Connell Foley and Cosma impleaded the fourth-party defendants, seeking contribution *1102 on allegations that they committed legal malpractice, either as co-counsel or as successor counsel in the underlying trial and unsuccessful appeal.
Connell Foley and Cosma moved for summary judgment on ITAS' malpractice claims based solely on the entire controversy doctrine, and Connell Foley moved for summary judgment on its complaint. The fourth-party defendants moved for summary judgment on the malpractice claims alleged against them by Connell Foley and Cosma. The trial court denied the fourth-party defendants' motions, dismissed ITAS' malpractice claims, and entered a $339,055.34 judgment on Connell Foley's complaint. ITAS and the fourth-party defendants appeal.
Since ITAS' malpractice claim was filed after Olds v. Donnelly, 150 N.J. 424, 696 A.2d 633 (1997), was decided, it is not barred by the entire controversy doctrine. That the claim accrued during the brief hegemony of Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995), is irrelevant under Olds' limited retroactivity ruling. Since Connell Foley's money judgment was primarily based on dismissal of the ITAS malpractice claim, it must be reversed and remanded for trial along with the trial of ITAS' claims of malpractice against Connell Foley and Cosma.
To the extent that Connell Foley's claims against the fourth-party defendants are based on actions taken as successor counsel in the underlying case, they are barred by Olds' separate determination that successor counsel may not be impleaded in these circumstances. Therefore, we reverse the ruling allowing Connell Foley and Cosma to pursue successor-counsel claims. On the other hand, we see no sound reason for extending the Olds' successor-counsel ruling to co-counsel. Therefore, we affirm the ruling allowing Connell Foley and Cosma to pursue malpractice claims for contribution against the fourth-party defendants who acted as co-counsel, and remand those claims for trial.

I
On October 10, 1989, when the underlying litigation began, ITAS was a New Jersey travel agency owned by Ceil Shar and her daughter, Marilyn Ziemke. It specialized in organizing group tours for families in the United States who wanted to celebrate religious rites in Israel. Shalom Almog and Ben Ami Geller had managed the tours for ITAS in Israel. In the New Jersey litigation, they alleged that ITAS, Shar and Ziemke were liable to them for, among other things, breach of contract, intentional infliction of emotional harm, and defamation.
ITAS asked its Illinois law firm, fourth-party defendant Seyfarth, Shaw, Fair-weather & Geraldson ("Seyfarth"), to recommend a law firm to represent it in New Jersey. Seyfarth suggested Connell Foley, and ITAS retained that firm in August 1992. Later that year, Seyfarth filed suit for ITAS against Geller and others in Illinois. The action alleged that Geller and the other defendants had formed their own travel agency to compete with ITAS and had then defamed ITAS. These two cases, which were pending at the same time, shared many of the same witnesses and discovery. Connell Foley assigned its case to Thomas Cosma. Seyfarth assigned the Illinois litigation to two associates, fourth-party defendants Daniel J. Voelker and Christopher V. Langone, who, at ITAS' request, were also directed by Seyfarth to monitor and assist Cosma in his defense of the New Jersey action.
The primary support for the co-counsel malpractice claims by Connell Foley and Cosma against Seyfarth and its associates is Cosma's affidavit in opposition to the fourth-party defendants' motion for summary *1103 judgment. In summary, he affirmed that throughout the case he had "numerous communications with" Voelker and Langone, which included "substantive matters, such as the coordination and preparation of witnesses for the trial . . ., the assembling and presentation of evidence on behalf of the ITAS defendants during the trial, and the identification of issues for post-trial motions." He added that "Voelker attended four weeks out of the approximate five-week trial and, during that time, was an active participant, although not admitted as counsel of record or pro hac vice." Voelker continually conferred with Cosma about the conduct of the trial and strategy, and participated in trial preparation sessions at Connell Foley's office. Cosma also said that Voelker withheld information developed during the Illinois trial that was of critical importance to a proper presentation of the defense in the New Jersey case. Furthermore, he added, "there were few aspects of discovery and virtually no component of the trial that were not reviewed with Voelker for his approval and comment." During the trial, Voelker "was in direct and frequent communication with Mr. Langone at Seyfarth Shaw's offices in Chicago."
Cosma's affidavit was intended to buttress Connell Foley's allegations, which included these charges of malpractice: failure to provide information critical to the defense of the defamation action, and "knowingly permit[ting] Ziemke to offer testimony in the Defamation Action, on the issue of punitive damages, that was inconsistent with and contrary to testimony offered by Ziemke in ... [the Illinois action].. . ."
The Almog action jury trial began in July and ended in September 1993 with the return of the over $8 million verdict against the ITAS defendants, which was based, in part, on punitive damages awards totaling $5.5 million.
By letter dated October 1, 1993, the judge made the unprecedented proposal that ITAS pay for the services of a court-appointed certified public accountant who would be charged with the responsibility of determining "WHETHER THE PUNITIVE DAMAGES AWARD WOULD DESTROY DEFENDANTS AS FUNCTIONING TAX PAYING NEW JERSEY BUSINESS ENTITIES." The judge felt this was appropriate because the defendants had, in his view, flagrantly violated discovery orders concerning their financial condition, which he believed might have resulted in the jury failing to adhere to the punitive damages charge. Connell Foley responded with a conditional acceptance of the proposal. Three weeks later the firm moved to withdraw as counsel of record, but the judge denied the motion until the post-trial motions were completed.
Connell Foley filed a motion for judgment notwithstanding the verdict, or a new trial, using papers initially drafted by Seyfarth, which included the argument that the amount of the punitive damages award was excessive. The motion was denied. On November 19, 1993, Connell Foley was permitted to withdraw as counsel for ITAS, and on November 24, 1993, H. Neil Broder, who was not affiliated with Seyfarth, filed an appeal on behalf of ITAS. Broder unsuccessfully sought to have Voelker and Langone admitted pro hac vice to argue the appeal, and in February 1994, he asked the judge to hold the proposal for appointing an accountant in abeyance pending the outcome of the appeal. On January 24, 1997, Langone was admitted pro hac vice so that he could argue the case for ITAS instead of Broder, who had brought another motion for this relief because he had been injured in an accident. By then Langone was no longer associated with Seyfarth.
*1104 Connell Foley filed its complaint for fees in 1995. ITAS asserted legal malpractice as an affirmative defense in its answer, which was filed on February 28, 1996. On February 25, 1997, the Almog judgment against ITAS was affirmed in all respects. Almog v. Israel Travel Advisory Serv., Inc., 298 N.J.Super. 145, 689 A.2d 158 (App.Div.), certif. granted, 151 N.J. 463, 700 A.2d 876 (1997), appeal dismissed, 152 N.J. 361, 704 A.2d 1297, cert. denied sub nom. Ziemke v. Almog, 525 U.S. 817, 119 S.Ct. 55, 142 L. Ed.2d 42 (1998). The Appellate Division panel noted that ITAS did not challenge the amount of the punitive damages award on appeal, 298 N.J.Super. at 161, 689 A.2d 158, and expressed the view that Broder's decision not to have ITAS participate in the trial judge's proposal for his post-judgment review of the amount of punitive damages was a waiver by ITAS of its right to have the issue reviewed on appeal. Id. at 161-62, 689 A.2d 158. Nonetheless, it reviewed the award on the merits and found it reasonable. Id. at 161, 689 A.2d 158.
On July 16, 1997, the Supreme Court filed its opinion in Olds v. Donnelly, 150 N.J. 424, 696 A.2d 633 (1997). Because of a stay pending the Almog appeal and other procedural matters that need not be detailed, ITAS did not file its counterclaim and third-party complaint alleging legal malpractice until July 15, 1998.

II
ITAS' is entitled to pursue its malpractice claims against Connell Foley and Cosma under the Supreme Court's decision in Olds v. Donnelly, supra, 150 N.J. at 442, 696 A.2d 633, "exempt[ing] all attorney-malpractice actions from the entire controversy doctrine." In addition, ITAS' position is independently buttressed by the timing of the relevant decisions preceding Olds, which we will discuss first.
In Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 23-26, 560 A.2d 1169 (1989), the Court extended the entire controversy doctrine to joinder of parties. That case was decided only a few months before the Almog case was filed. In Circle Chevrolet, supra, 142 N.J. at 298-99, 662 A.2d 509 (1995), the Court further extended application of the doctrine, this time to attorney-malpractice actions, while observing that "[a]pplication of the rule, however, is discretionary and clarification of the limits of the doctrine is best left to case-by-case determination." Id. at 290, 662 A.2d 509. In Olds, the Court expressly described Circle Chevrolet as an "expansion of the entire controversy doctrine to attorney-malpractice actions." Olds, supra, 150 N.J. at 440, 696 A.2d 633.
Circle Chevrolet was decided after the Almog trial had been completed and while the appeal was pending. Nonetheless, Connell Foley and Cosma contend that based on Cogdell, ITAS should have known that it was obliged to conduct itself in accordance with the dictates of the yet-undecided Circle Chevrolet. That argument is contrary to the decision in Circle Chevrolet, where the Court held that plaintiffs were obliged to act in accordance with the party-joinder rule announced in Cogdell only because that decision had been issued while initial pleadings were still being filed. Circle Chevrolet, 142 N.J. at 301, 662 A.2d 509. By contrast, the Almog trial was over when Circle Chevrolet was decided. Consequently, applying the attorney-malpractice party-joinder rule here would require a further and obviously inequitable extension of Circle Chevrolet.
Apart from the timing of Circle Chevrolet in relation to the proceedings in Almog, it is clear that the Olds rule applies to this case. The Court held that its decision would apply "to all pending cases, whether on appeal or in the trial courts," Olds, *1105 supra, 150 N.J. at 449, 696 A.2d 633, and this case was then pending in the trial court. Connell Foley and Cosma argue that we should ignore the clear dictate of Olds because ITAS' malpractice claim accrued during the hegemony of Circle Chevrolet, or because ITAS was aware of some of its malpractice claims during the Almog trial, or because the Almog appeal was no longer pending when Olds was decided,[1] or because ITAS was legally sophisticated. In Gillman v. Waters, McPherson, McNeill, P.C., 271 F.3d 131, 137-39 (3d Cir.2001), the Third Circuit held that Olds applies to a malpractice claim that accrued during the brief hegemony of Circle Chevrolet but was not filed until after Olds. In short, we agree entirely with that decision and its reasoning, and we reject the other grounds offered for applying the entire controversy doctrine to this case because they are exceptions unendorsed by Olds and inconsistent with its meaning and policies. Therefore, the dismissal of ITAS' malpractice claims is reversed. As noted, that ruling obviously requires reversal of the judgment on the Connell Foley fee-collection complaint because the primary defense is malpractice.
The Connell Foley-Cosma fourth-party malpractice claims seeking contribution from Broder and Langone for their conduct during the Almog appeal should have been dismissed because they were then both acting as successor counsel.
The Court resolved this issue in Olds, where plaintiff's initial attorney failed to serve the summons and complaint in a timely fashion, resulting in a defense motion for dismissal of the case with prejudice. The successor attorney opposed the motion on plaintiff's behalf without success, and then filed suit for plaintiff against his first attorney for legal-malpractice. That attorney sought contribution from the successor attorney, alleging that he had failed to properly oppose the motion to dismiss. 150 N.J. at 428-30, 696 A.2d 633. Citing Malewich v. Zacharias, 196 N.J.Super. 372, 482 A.2d 951 (App.Div. 1984), and cases from California and Utah, the Court held that the claim for contribution could not be maintained because in the context of litigation, successor attorneys have no duty of care to their predecessors. Olds, supra, 150 N.J. at 443-44, 696 A.2d 633. But see Parler & Wobber v. Miles & Stockbridge, 359 Md. 671, 756 A.2d 526, 542 (2000); Brown v. LaChance, 165 Wis.2d 52, 477 N.W.2d 296, 301-03 (Ct.App.1991); Pappas v. Holloway 114 Wash.2d 198, 787 P.2d 30, 36-37 (Wash. 1990); Maddocks v. Ricker, 403 Mass. 592, 531 N.E.2d 583, 589 (1988); Schauer v. Joyce, 54 N.Y.2d 1, 444 N.Y.S.2d 564, 429 N.E.2d 83, 85 (1981); Goran v. Glieberman, 276 Ill.App.3d 590, 213 Ill.Dec. 426, 659 N.E.2d 56, 61 (1995). Those cases, we should note, approach the problem of successor-predecessor attorney-malpractice claims under a different legal theory than that adopted by Olds. Rather than considering whether the successor attorney owes his predecessor a duty, they focus on the concept of the joint and several liability of joint tortfeasors. And as the court observed in Parler & Wobber, in that situation the "right to contribution from a third party is predicated on the impleaded party's direct liability to the plaintiff." 756 A.2d at 534. It "does not require the existence of a duty owed ... between the two joint tortfeasors. . . ." Id. at 538-39 n. 8. Whether our Supreme Court would find on further review that those cases are persuasive in the context of successor-predecessor cases is not a matter for us to address. Since there is no difference in relation to the concept of duty between *1106 the subsequent handling of an appeal and the subsequent handling of a motion in the trial court, Olds forbids the actions against Broder and Langone for their handling of the Almog case on appeal.
Liability between co-counsel is the last issue we must decide. The question is whether Connell Foley and Cosma are entitled to contribution from fourth-party defendants, including Voelker and Langone (the latter for his conduct while still employed at the Seyfarth firm), for any malpractice that they participated in or separately committed during the pre-trial and trial proceedings in the Almog case. Connell Foley and Cosma assert that they are not relying on the breach of any duty to them. Rather, they assert that the fourth-party defendants breached their duty to ITAS, and should be held liable under the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5 ("JTCL"), despite ITAS' decision not to assert a malpractice claim against them.
This issue was not addressed in Olds and appears not to have arisen in any other case in New Jersey. Consequently, we turn for guidance to California, which appears to be the only jurisdiction that has addressed the issue of the right to contribution between co-counsel based on their duty of care, not to each other, but to the client.
In Musser v. Provencher, 28 Cal.4th 274, 121 Cal.Rptr.2d 373, 48 P.3d 408 (2002), the California Supreme Court had to decide whether the California rule prohibiting actions for contribution by a predecessor attorney against a successor attorney should be applied in the co-counsel context. It noted that two policy considerations support its rule barring contribution in predecessor-successor legal-malpractice cases: the "claim could create a conflict of interest for the client's new attorney ... between [his or her] duty to the client and [his or her] self-interest[,]" id. at 414, and the importance of "protecting the confidentiality of attorney-client communications." Ibid. As to the first concern, the court said that there is no reason "to believe that an attorney's self-interest will interfere with loyalty to the client just because the attorney, as a joint tortfeasor, may face [a contribution] claim if the client sues the attorney's ... co[-]counsel for malpractice." Ibid. As to the second concern, the court held it did not apply in this case because the client had expressly waived her attorney-client privilege with respect to the attorney she had not sued, but who was being sued for contribution by his co-counsel. Ibid. In general, the court concluded that co-counsel cases should be decided on a case-by-case basis, id. at 413-14, and it certainly did not hold that whenever the client refuses to waive the attorney-client privilege as to one of two co-counsel, contribution could not be sought by the other for malpractice in which both participated or for separate malpractice that contributed to their client's loss in the litigation. But the court did note that the "[t]he concern is that the law firm from which [contribution] is sought may be unable to defend itself without revealing privileged client communications." Id. at 414.
The fourth-party defendants contend in their brief that "continuation of [the malpractice claims against them] threatens the confidentiality of attorney-client communications between Seyfarth and ITAS," but they do not assert the existence of particular communications that they would need to disclose in their defense against the charge of malpractice. Thus, under Musser there would be no reason to excuse the fourth-party defendants from defending the malpractice claims based on their conduct as co-counsel.
The purpose of the JTCL is "to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff *1107 from arbitrarily selecting his or her victim." Holloway v. State, 125 N.J. 386, 400-01, 593 A.2d 716 (1991) (citations omitted). That purpose would be disserved if co-counsel were prohibited from seeking contribution because of the attorney-client privilege.
The privilege does not extend "to a communication relevant to an issue of breach of duty by the lawyer to his client, or by the client to his lawyer." N.J.R.E. 504(2)(c). Thus, when a client sues for legal malpractice, the privilege is impliedly waived. Implied waiver of the attorney-client privilege has been endorsed by those courts permitting contribution actions by predecessor counsel against successor counsel. The cases are collected in Parler & Wobber, supra, at 545-46 n. 12. While there might be instances in the predecessor-successor suits where implied waiver would be unfair to the client, we cannot envision any circumstance where that would be so when the client retains two attorneys to handle the same litigation, as occurred here. Since no specific prejudice has been suggested by ITAS or the fourth-party defendants, we need not concern ourselves with possible exceptions to a rule generally permitting one co-counsel in a litigated case to seek contribution from the other co-counsel when the client sues him or her for malpractice arising from the joint representation.
The principles of law set out in Cherry Hill Manor Assoc. v. Faugno, 182 N.J. 64, 861 A.2d 123 (2004), provide further support for our conclusion. Plaintiff's first attorney, Tuttle, failed to record a purchase money mortgage for plaintiff in connection with its purchase of real estate. When the seller defaulted, plaintiff retained the second attorney, Manicelli, who sued the seller for return of the deposit, which was supposed to have been secured by the purchase money mortgage, but failed to include a claim against Tuttle for malpractice. When the seller's debts were discharged in bankruptcy, plaintiff dismissed the action. Some years later, plaintiff retained the third attorney, Faugno, who sued Tuttle for malpractice. Although Tuttle filed a third-party complaint for contribution against Manicelli, Faugno did not assert a direct claim against Manicelli for failing to sue Tuttle in the prior litigation. After Circle Chevrolet was decided, Tuttle successfully moved for dismissal of the action against him based on the entire controversy doctrine, which also resulted in dismissal of his claim over against Manicelli. Three years later, the Supreme Court's decision in Olds was filed. At that point Faugno referred plaintiff to another attorney, D'Elia, who filed a malpractice action against Manicelli for his failure to join Tuttle in the first suit. That case was dismissed under Olds' limited retroactivity ruling because plaintiff's case against Tuttle had been resolved and because plaintiff should have joined Manicelli in the suit against Tuttle. Then came the case that was before the Court in Cherry Hill Manor. D'Elia filed suit for plaintiff against Faugno for his malpractice in failing to join Manicelli as a party defendant in the action against Tuttle. Faugno sought contribution from Tuttle and Manicelli. A trial between plaintiff and Faugno resulted in a judgment for plaintiff of almost $600,000. Faugno then sought contribution from Tuttle and Manicelli.
The Court held that Faugno was not entitled to contribution from Tuttle and Manicelli because they were not joint tortfeasors. Id. at 73, 861 A.2d 123. The Court observed that "[e]ach of Tuttle's, Manicelli's and Faugno's alleged malpractice constituted separate torts at disparate times with different damages covering a six-year period." Ibid. More specifically, the Court said this:
The harm visited on plaintiff by Tuttle, Manicelli and Faugno, although *1108 sharing a common core, was different in each instance. Tuttle caused harm to plaintiff by reason of Tuttle's failure to deliver and file a purchase money mortgage securing plaintiff's deposit monies and advances; Manicelli caused harm to plaintiff by failing to name Tuttle in the suit against the Seller; and Faugno caused harm to plaintiff by failing to include Manicelli in the suit against Tuttle.
[Id. at 75-76, 861 A.2d 123.]
The Court then distinguished that case from our decision in Labracio Family P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J.Super. 155, 773 A.2d 1209 (App.Div. 2001):
Unlike Faugno, who seeks contribution here from those whose allegedly tortious acts occurred before Faugno's now admitted negligence, the two attorney/claimants in LaBracio sought contribution from a successor attorney arising from the failure of all three lawyers in the same transaction to insure that a deed and mortgage were filed timely. Id. at 158-59, 773 A.2d 1209. Under those circumstances, joint tortfeasor contribution liability was rightly apportioned among all three attorneys who shared joint liability (each for failing to file the deed and mortgage in a timely manner as part of the same real estate transaction) and who all caused the same injury (the untimely filing of the deed and mortgage that resulted in liens with priority filing listed against the realty).
[Cherry Hill, supra, 182 N.J. at 76, 861 A.2d 123.]
If it is appropriate to hold successor attorneys liable under the JTCL to predecessor attorneys who each committed, though at different times, the same act of malpractice with respect to the same real estate transaction, as occurred in LaBracio, which the Supreme Court said was correctly decided, then it would follow that co-counsel should also be entitled to contribution when only one of them is sued with regard to a case both were handling at the same time.
The LaBracio opinion could be read as turning upon the attorneys' duties to each other, because, as we noted in that case, defendant Burger, the last attorney in the chain of events, told the predecessor attorneys that he was going to record the deed, and they relied on his representation to that effect. 340 N.J.Super. at 162-63, 773 A.2d 1209. However, the Court in Cherry Hill did not focus on that aspect of LaBracio.
The issue in Cherry Hill, as framed by the Court, was not the duty of each attorney to the others, but whether they were joint tortfeasors with respect to the client. Quoting Markey v. Skog, 129 N.J.Super. 192, 200, 322 A.2d 513 (Law Div.1974), the Court indicated that
[t]he [JTCL] test's core proposition may be stated succinctly: "It is common liability at the time of the accrual of plaintiff's cause of action which is the [s]ine qua non of defendant's contribution right."
[Cherry Hill, supra, 182 N.J. at 72, 861 A.2d 123 (emphasis added).]
In applying this test to the case before it, the Cherry Hill Court distinguished LaBracio as having been correctly decided, because in LaBracio all of the attorneys had jointly caused the same injury to the client as part of the same real estate transaction. Id. at 76, 773 A.2d 1209. We are bound by the Court's reading of LaBracio, as we are bound by its holding in Cherry Hill.
In the Almog case, ITAS' malpractice cause of action accrued when ITAS suffered the $8 million judgment. ITAS claims that injury was caused by Cosma's and Connell Foley's malpractice. Cosma *1109 and Connell Foley contend that, assuming there was any malpractice, it came about as the joint result of their actions and those of co-counsel during the Almog trial. They are claiming "common liability" with the Seyfarth attorneys "at the time of the accrual" of ITAS' cause of action. Ibid. In light of Cherry Hill and LaBracio, that claim is cognizable under the JTCL.
Although the fourth-party defendants suggest at one point that they should not be held responsible for their conduct because they were never formally admitted in New Jersey as counsel for ITAS in the Almog litigation, they provide no authority for that proposition, and we know of none. Whether admitted here, or not, the fourth-party defendants were deeply involved in the litigation, and, according to Cosma, proposed or agreed to the strategy and tactics used in defending ITAS. If they committed malpractice, whether formally admitted in this state or not, they are responsible under the JTCL.
Affirmed in part; reversed in part; and remanded for further proceedings.
NOTES
[1] Actually, the Almog case was pending in the Supreme Court on a petition for certification, which was initially granted after Olds was decided.