**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0494-19T3

LANE CONSTRUCTION CO.,
INC.,

     Plaintiff-Appellant,

v.

WILLIAM P. MUNDAY, ESQ.,
BRUCE S. ROSEN, ESQ.,
MCCUSKER, ANSELMI, ROSEN
AND CARVELLI, PC, and
LOWENSTEIN SANDLER, PC,

     Defendants-Respondents.

_____

Argued January 13, 2020 – Decided March 3, 2020

Before Judges Sabatino, Sumners and Natali.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0972-17.

Gregg D. Trautmann argued the cause for appellant (Trautmann and Associates, LLC, attorneys; Gregg D. Trautmann, on the brief).

David Morgan Blackwell argued the cause for respondent William P. Munday, Esq. (Donnelly Minter & Kelly, LLC, attorneys; David Morgan Blackwell, of counsel; Jared James Limbach, on the brief).

Daniel Albert Malet argued the cause for respondents Bruce S. Rosen, Esq. and McCusker, Anselmi, Rosen & Carvelli, PC (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Christopher James Carey, of counsel and on the brief; Daniel Albert Malet, on the brief).

Philip Touitou argued the cause for respondent Lowenstein Sandler, PC (Ackerman LLP, attorneys; Philip Touitou, on the brief).

PER CURIAM

In this legal malpractice action, Lane Construction Co., Inc. (Lane) appeals on leave granted from an August 16, 2019 Law Division order that compelled it to produce "all documents and communications" with its superseding counsel relating to an underlying mechanic's lien foreclosure litigation and its settlement. The order also required the re-deposition of Lane's principals, President Mark Lane, Vice President of Construction Robert M. Lane, and Chairman Robert Lane. Having reviewed the record, we affirm in part and remand in part.

First, as explicitly provided in N.J.S.A. 2A:84A-20(2)(c), the attorney-client privilege does not extend "to a communication relevant to an issue of

breach of duty by the lawyer to his client, or by the client to his lawyer." The communications at issue are clearly relevant to the alleged breach of such a duty by defendants William P. Munday, Esq. (Munday), Bruce S. Rosen, Esq. (Rosen), McCusker, Anselmi, Rosen and Carvelli, PC (MARC), and Lowenstein Sandler, PC (Lowenstein) to plaintiff. Second, plaintiff placed the disputed discovery directly at issue when it sued its predecessor counsel for malpractice. Third, the documents and related discovery are clearly necessary for defendants to defend properly against plaintiff's claims that they breached a standard of care that proximately and fully caused plaintiff's damages.

To ensure that only documents and information related to superseding counsel's involvement in the underlying foreclosure action and particularly that matter's settlement are produced, on remand plaintiff shall produce a privilege log identifying all disputed privileged communications. The trial court should then conduct an in-camera review of those materials and make specific rulings consistent with the legal principles detailed in our opinion.

I.

Plaintiff, a general contractor, agreed with The Great Atlantic and Pacific Tea Company (A&P) to perform construction and renovation work at a supermarket in New York for a base contract price of $5,738,300. A&P

3

allegedly "requested and authorized additional work," resulting in change orders and cost overruns totaling $1,117,491.27.

After A&P refused to pay plaintiff for these additional costs, plaintiff retained Munday, then a partner at Lowenstein. Although Munday was not admitted to the New York bar, he prepared and filed a mechanic's lien[1] in that state encumbering the property where the work was performed reflecting plaintiff's alleged damages of $1,117,491.27.

After filing the lien, Munday left Lowenstein and became associated with MARC, where he continued to represent plaintiff. According to plaintiff, Rosen, a partner at MARC, began assisting Munday with matters relating "to the litigation aspects of the . . . contract and the maintenance of the subject mechanic's lien."

On May 20, 2010, Rosen filed an extension of the mechanic's lien. Six months later, pursuant to an arbitration clause in the contract between plaintiff and A&P, Rosen also filed an arbitration demand with the American Arbitration

---

[1] Where "[a] contractor . . . performs labor or furnishes materials for the improvement of real property" based on the consent or request of the owner, the contractor "shall have a lien for the principal and interest, of the value, or the agreed price, of such labor, . . . from the time of filing a notice of such lien." N.Y. Lien Law § 3. Such a lien includes "benefits and wage supplements due or payable for the benefit of any laborer, or materials upon the real property improved or to be improved and upon such improvement . . . ." Ibid.

A-0494-19T3

Association (AAA), after initially filing, then dismissing a New Jersey state court action against A&P. The following month, A&P filed for Chapter 11 bankruptcy.

Five months later, Rosen filed a mechanic's lien foreclosure complaint in New York state court against the landowners. That same day, the New York court entered an order extending plaintiff's mechanic's lien for one year. Rosen, however, did not extend the mechanic's lien the following year.

After A&P's bankruptcy plan was confirmed, the New York court stayed the foreclosure proceedings pending the outcome of the arbitration between plaintiff and A&P. The arbitration concluded with a $308,737.98 award in plaintiff's favor. The following year, A&P filed a second bankruptcy petition, pursuant to which defendants failed to timely file a notice of claim. Three days after its second bankruptcy filing, A&P intervened in the New York foreclosure action between plaintiff and the landowners and filed a counterclaim against plaintiff for what is known under New York law as willful exaggeration.[2]

---

[2]  New York law provides that "[i]n any action or proceeding to enforce a mechanic's lien upon a private . . . improvement," where a court finds "that a lienor has willfully exaggerated the amount for which he [or she] claims a lien . . . [such] lien shall be declared to be void and no recovery shall be had thereon." Pyramid Champlain Co. v. Brosseau & Co., 699 N.Y.S.2d 516, 520 (App. Div. 1999) (quoting N.Y. Lien Law § 39). Additionally, where such lien has been

A-0494-19T3

According to Rosen's answer in the malpractice case, on April 12, 2016, he and Munday appropriately informed plaintiff that they had made an error in the course of their representation and plaintiff should retain separate counsel regarding a possible malpractice claim. Specifically, Rosen informed plaintiff that they failed to extend the notice of pendency which resulted in the expiration of the mechanic's lien and rendered the arbitration award uncollectable.[3]

The following month, in a May 5, 2016 e-mail, Munday advised plaintiff that its potential exposure to damages under A&P's willful exaggeration claim was "the difference between the amount stated on the mechanic's lien and that which the AAA panel determined was owed," totaling $808,753.30, as well as the costs and attorney's fees incurred by the landowner and A&P. The following week, on May 11, 2016, plaintiff advised MARC, Munday, and Rosen that it was terminating their representation.

---

declared void by a court, the lienor "shall be liable in damages to the owner or contractor." N.Y. Lien Law § 39(a). To establish willful exaggeration, the party opposing the lien must "show that the amounts set forth were intentionally and deliberately exaggerated." Garrison v. All Phase Structure Corp., 821 N.Y.S.2d 898, 899 (App. Div. 2006).

[3] Pursuant to New York Lien Law § 17, where a lienor fails to file a notice of pendency to preserve its mechanic's lien, "the lien expire[s] by operation of law . . . one year after it was filed." See In re Flintlock Realty & Constr. Corp., 591 N.Y.S.2d 439, 439 (App. Div. 1992).

A-0494-19T3

On May 14, 2016, the Supreme Court of New York entered a consent order substituting Levitt LLP (Levitt) as Lane's attorney of record in the foreclosure action. Also, on May 25, 2016, Gregg D. Trautmann, Esq., of Trautmann & Associates, LLC (Trautmann) indicated in an e-mail to the Supreme Court of New York that plaintiff had retained Trautmann as its counsel in the foreclosure matter as well. Shortly thereafter, plaintiff settled the New York litigation with A&P by agreeing to pay $90,000 in exchange for A&P's withdrawal of the willful exaggeration claim.

On May 1, 2017, plaintiff filed a complaint in the Law Division against Munday, Rosen, and MARC alleging malpractice and seeking compensatory damages, consequential damages, and declaratory judgment. Specifically, plaintiff alleged that the Munday, Rosen, and MARC defendants: 1) "wrongfully held themselves out to be knowledgeable in the field[s] of litigating construction contract disputes . . . [and] AAA arbitration claims"; 2) misled plaintiff as to the nature of an interlocutory appeal because they advised that the appeal "concerned [A&P]'s efforts to avoid submitt[ing] the underlying contract action to . . . arbitration," when the appeal in fact "concerned [A&P's] argument that the New York mechanic's lien was filed late"; and 3) failed "to inform the plaintiff that it faced a 'willful exaggeration' claim in the New York action."

A-0494-19T3

Plaintiff further alleged that those defendants breached their "duty to properly represent . . . plaintiff" and "wrongfully held themselves out to be knowledgeable in the field of mechanic's liens." Plaintiff later amended the complaint to include Lowenstein as a defendant.

In May 2019, defendants deposed Mark, Robert M., and Robert Lane. At each deposition, plaintiff's counsel repeatedly objected to questioning regarding plaintiff's communications with Trautmann and Levitt. By way of example, at Mark Lane's deposition, plaintiff's counsel instructed him not to answer the question: "Did lawyers at Levitt . . . recommend that [plaintiff] settle this claim?" Further, plaintiff's counsel objected to a question at Robert M. Lane's deposition asking whether he "recall[ed] that . . . Trautmann was asked to assist in trying to settle the [underlying] case." Plaintiff's counsel also objected at Robert Lane's deposition to a question posed by defense counsel regarding whether he recalled having a conversation about A&P's willful exaggeration claim "with any attorney."

Shortly after the Lane depositions, Levitt responded to a subpoena duces tecum propounded by Munday. In response, Levitt produced documents that indicated Trautmann, not Levitt, negotiated the settlement with A&P. These documents included: 1) the May 25, 2016 letter from Trautmann to the New

A-0494-19T3

York Supreme Court; 2) a June 2016 e-mail from Trautmann to counsel for A&P "discussing discovery and inviting [A&P's counsel] to 'revisit' a prior discussion regarding settlement"; 3) another June 2016 e-mail from Trautmann to Levitt and plaintiff with regard to settlement discussions; 4) various e-mails indicating that Trautmann had principals of plaintiff authorize the A&P settlement in writing; 5) a series of July 2016 e-mails between Trautmann and A&P's counsel negotiating payment of filing fees; and 6) an August 2016 check from Trautmann to Levitt, which Munday "believed to represent a portion of the underlying settlement funds."

After receiving these documents, defendants filed a motion to compel plaintiff to produce "any paper or electronic documents or communications [between plaintiff and Trautmann or Levitt] related to the underlying litigation," to re-depose the Lanes, and to extend discovery. Plaintiff opposed the motion and contended that it had provided all responsive and non-privileged discovery.

Further, at the August 16, 2019 oral argument on the motion, plaintiff's counsel stated that it already informed defendants that settling the underlying litigation "was a business decision." Plaintiff's counsel also explained that plaintiff did not pursue the arbitration award because Rosen and Munday informed them that they "no longer ha[d] a mechanic['s lien] claim because

[Rosen and Munday] failed to extend [the lien] as required by New York law." Plaintiff also maintained that questions relating to the identity of plaintiff's attorneys "and when were they retained" were protected by the attorney-client privilege.

After hearing oral arguments, the trial court granted defendants' motion in an oral opinion. The court, relying on In re Kozlov, 79 N.J. 232, 243-44 (1979) and State v. Mauti, 208 N.J. 519, 538-39 (2012), concluded that the attorney-client privilege did not preclude discovery of communications between plaintiff and its successor counsel and accordingly ordered plaintiff, Trautmann, and Levitt "to produce all documents and communications in their possession related to the underlying litigation" with the landowner and A&P. It further compelled the Lanes to re-appear for further questioning at deposition.

The following month, plaintiff filed a motion to quash a subpoena served by defendants on Karen L. Weiss, Esq., the New York attorney at Levitt who represented plaintiff in the foreclosure litigation, and it also sought a stay pending leave to appeal the court's August 16, 2019 interlocutory order. In response, defendants filed cross-motions seeking to set certain dates for the re-depositions of the Lanes and the deposition of Weiss, and to extend discovery.

The same day, plaintiff filed an application for interlocutory review of the trial court's August 16, 2019 order, which we granted on October 1, 2019.

On October 10, 2019, the trial court denied plaintiff's motions and defendants' cross-motion to extend discovery but granted defendants' cross-motions to set dates for the re-depositions of the Lanes and the deposition of Weiss. With regard to plaintiff's motion for a stay pending appeal, the court concluded that plaintiff did not demonstrate that it would suffer irreparable harm because the order compelling discovery only related to "those discovery materials related to the negotiation process with A&P." Further, the court found that plaintiff did not have a reasonable likelihood of success on the merits because discovery of the materials relating to the settlement between plaintiff and A&P "directly affects the calculation of damages against [defendants]," and "the parties have not proffered any other method to obtain the information Weiss may have without a deposition." Finally, the court balanced the hardships of the parties and found that a stay pending appeal was unnecessary.

We subsequently granted plaintiff's motion to stay the trial court proceedings to the extent that those proceedings involved "discovery that affects the privilege issues now pending before this court."

A-0494-19T3

## II.

We "normally defer to a trial court's disposition of discovery matters . . . unless the court has abused its discretion[,]" or the decision is based on "a mistaken understanding of the applicable law." Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997). Because "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference[,]" Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995), we review the applicability of the attorney-client privilege de novo.

The attorney-client privilege, despite it being critically important to ensure full and frank communications between lawyers and clients, "is neither absolute nor sacrosanct." Hedden v. Kean Univ., 434 N.J. Super. 1, 11-12 (App. Div. 2013) (quoting Biunno, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 504(3) (2013)). Indeed, "privileges stand in what [our Supreme Court] ha[s] declared to be a 'disfavored status' because they have an effect on the truth-seeking function." Mauti, 208 N.J. at 532 (2012) (quoting Payton, 148 N.J. at 539). Thus, testimonial privileges have been construed narrowly "because they prevent the trier of fact from hearing relevant evidence and thereby undermine the search for truth[,] . . . [and] sensibly accommodate privileges to the aim of a

just result, and accept them to the extent they outweigh the public interest in full disclosure." Id. at 531-32 (quoting State v. J.G., 201 N.J. 369, 383 (2010)).

To address these competing interests, the Supreme Court detailed a three-part test that a party seeking to pierce the attorney-client privilege must satisfy: (1) there [must be] "a legitimate need . . . to reach the evidence sought to be shielded"; (2) the evidence must be relevant and material to an issue in the case; and (3) there must be a finding, by a fair preponderance of the evidence, that the information sought cannot be obtained from a less intrusive source. Kozlov, 79 N.J. at 242-43.

In Mauti, the Supreme Court made clear, however, that the third prong of the Kozlov test must be construed narrowly:

> Kozlov did not propound a broad equitable balancing test pursuant to which any privilege is subject to piercing if the adversary 'needs' relevant evidence that cannot be obtained from another source. Such an approach would eviscerate the privileges and trench on the legislative judgments informing them. To the contrary, in Kozlov, . . . we recognized that only in the most narrow of circumstances, such as where a privilege is in conflict with a defendant's right to a constitutionally guaranteed fair trial, would the need prong of its test be satisfied.
>
> [Mauti, 208 N.J. at 537-38 (emphasis added).]

The Mauti Court added that in the context of a statutory privilege, "the privilege could not be overborne, except where specifically so provided by the Legislature or where the need arose out of a constitutionally based command . . . ." Id. at 538. In this regard, the attorney-client privilege does not extend "to a communication relevant to an issue of breach of duty by the lawyer to his client, or by the client to his lawyer." N.J.R.E. 504(2) (quoting N.J.S.A. 2A:84A-20(2)).

Further, "a privilege may be waived 'implicitly' where a party puts a confidential communication 'in issue' in a litigation." Mauti, 208 N.J. at 532 (quoting Kinsella v. Kinsella, 150 N.J. 276, 300 (1997)).[4] In the context of attorney malpractice actions, it is well-settled that a client waives the protections of the attorney-client privilege when he sues his attorney. Connell, Foley & Geiser, LLP v. Israel Travel Advisory Servs., Inc., 377 N.J. Super. 350, 361-62 (App. Div. 2005); State v. Garron, 177 N.J. 147, 175 (2003).

---

[4] The privilege can also be waived if the defendant "contracted" to do so, or "made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone." N.J.R.E. 530 (quoting N.J.S.A. 2A:84A-29). As noted, Levitt produced certain communications in response to Munday's subpoena. No party has argued that Levitt's production constituted a partial or complete waiver of the attorney-client privilege and we, accordingly, do not address such a waiver claim.

A-0494-19T3

"In essence, in [such a] circumstance[], the party who places a confidential communication in issue voluntarily creates the 'need' for disclosure of those confidences to the adversary."  Mauti, 208 N.J. at 532.[5]  The Kozlov and the Kinsella "at issue" line of cases establish the narrow circumstances, apart from the express exceptions in N.J.S.A. 2A:84A-20, under which the "need" prong can be satisfied:  1) a party has explicitly or implicitly waived the privilege or 2) where a constitutional right is at stake.

With these legal principles as our guidepost, we affirm (with certain modifications) the court's August 16, 2019 order on three independent grounds. First, pursuant to N.J.S.A. 2A:84A-20(2), the attorney-client privilege does not apply to communications "relevant to an issue of breach of duty by the lawyer to his client, or by the client to his lawyer." See Mauti, 208 N.J. at 538 (noting

---

[5]  The Mauti Court cited a number of cases, including United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 564-65 (App. Div. 1984), as examples of an implicit waiver of the attorney-client privilege.  Mauti, 208 N.J. at 532.  In Wolosoff, the plaintiff sought to rescind a settlement agreement asserting that defendant made material misrepresentations in the course of the settlement discussions and sought communications between plaintiff and counsel to challenge its claim that plaintiff relied on defendant's alleged misrepresentations. 196 N.J. Super. at 559-60.  We ordered disclosure of the privileged communication to prevent plaintiff from inequitably "divulg[ing] whatever information is favorable to its position and assert the privilege to preclude disclosure of . . . detrimental facts." Id. at 567.

A-0494-19T3

that the attorney-client privilege cannot be "overborne, except where specifically so provided by the Legislature").

Second, by suing Munday, Rosen, MARC, and Lowenstein claiming they committed legal malpractice, plaintiff implicitly waived the attorney-client privilege by placing at issue in the malpractice action the legal advice Trautmann and Levitt as superseding counsel provided to them, as that advice is directly relevant to the cause of plaintiff's alleged damages (i.e., whether certain of plaintiff's claimed damages were proximately caused by the actions of defendants or the alleged negligent settlement of the underlying action by Trautmann and Levitt), and their request that defendants reimburse them for the $90,000 settlement paid to A&P.[6] See, e.g., Connell, Foley & Geiser, 377 N.J. Super. at 361-62.

In this regard, defendants contend in their respective answers and in discovery responses that the cause of plaintiff's damages was not any negligent act that they may have committed, but rather the separate, intervening

---

[6] We acknowledge that the court did not expressly rely on N.J.S.A. 2A:84A-20(2) or the at-issue doctrine when piercing the attorney-client privilege. Appeals, however, are taken only from written judgments or orders, Konczyk v. Konczyk, 367 N.J. Super. 512, 514 n.1 (App. Div. 2004), and we may affirm a trial court's order for reasons different from those expressed by the trial court. State v. Armour, 446 N.J. Super. 295, 310 (App. Div. 2016).

negligence of Trautmann and Levitt. Specifically, defendants assert that Trautmann's and Levitt's effective abandonment of the $308,000 arbitration award related to the mechanic's lien and concomitant $90,000 payment was negligent because, contrary to their claims, the arbitration award had value and defendants did not "willfully exaggerate" the claim under New York law. According to defendants, a "factfinder . . . may well determine that plaintiff would have prevailed in the underlying litigation it if had not settled, thereby extinguishing plaintiff's current malpractice claims and inculpating successor counsel." Defendants also argue that to the extent plaintiff asserts that Rosen's, Munday's, and MARC's actions in failing to file a timely notice of pendency vitiated the arbitration award, those actions also extinguished the willful exaggeration claim, rendering the advice and decision to pay A&P $90,000 discoverable.

While we do not pass on the merits of these assertions, we see no principled reason under the facts here to except communications between successor counsel and a client, particularly when those communications may relate directly to the cause and quantum of the alleged damages.[7] See Connell,

---

[7] Plaintiff describes defendants' arguments as "sophistry" unsupported by any expert testimony. We disagree that an expert report was required prior to the

Foley & Geiser, 377 N.J. Super. at 361-62 ("While there might be instances in the predecessor-successor suits where implied waiver would be unfair to the client, we cannot envision any circumstance where that would be so when the client retains two attorneys to handle the same litigation . . . .").

Third, we agree with the court that production of communications between Trautmann, Levitt, and plaintiff was warranted upon application of the Kozlov tripartite test, as modified by the Mauti Court. In this regard, refusing to pierce the attorney-client privilege in this case would severely handicap defendants' constitutional right to a fair trial. See Mauti, 208 N.J. at 537-38. Without being able to inquire at deposition and review documents relating to the reasons why Trautmann and Levitt decided to resolve the underlying litigation, defendants would be severely and impermissibly curtailed in establishing its claim that plaintiff entered into a detrimental settlement agreement due to the alleged negligence of its successor counsel.

As defendants correctly maintain, because the limited discovery record supports the conclusion that Trautmann and Levitt each "played an integral role

---

court compelling the clearly relevant and necessary discovery. We expressly do not address whether an expert opinion or testimony is required to establish any of the parties' substantive claims or defenses. Such a determination should be made by the trial court in the first instance.

18

in negotiating the settlement . . . and advising [p]laintiff to pay $90,000 to A&P despite receiving a favorable $308,737.98 AAA [a]rbitration award," information relating to counsels' advice is vital to defendants' position that they did not commit legal malpractice or, alternatively, that Trautmann and Levitt were partially liable for plaintiff's alleged damages.

Further, as plaintiff seeks to recover as damages the $90,000 settlement, defendants have a legitimate need to access communications between plaintiff, Trautmann, and Levitt to determine the validity of such a claim for reimbursement. As the trial court correctly reasoned, in order for "this litigation [to be] fairly tried with all available information, [defendants] have a [constitutional] right to explore" communications between plaintiff, Trautmann, and Levitt regarding the underlying settlement. Indeed, as Munday notes on appeal, plaintiff "simultaneously claim[s] the underlying settlement as damages and [attempts to] block defendants' every attempt to obtain information regarding the circumstances surrounding [it]."

As to the second Kozlov prong, as stated in Dontzin v. Myer, 301 N.J. Super. 501, 508-09 (App. Div. 1997), "it would be a rare confidential communication that would not satisfy the relevancy test." Kozlov therefore requires defendants to establish both that the information is both relevant and

19

material, a requirement easily met here. As noted, the communications are directly relevant and material to the issue of which of plaintiff's claimed damages were proximately caused by defendants' alleged breach.[8]

With respect to the third Kozlov prong, we find no support in the record that discovery related to the reasons plaintiff settled the underlying litigation is available from any other less intrusive source. See Kozlov, 79 N.J. at 243-44 (quoting In re Farber, 78 N.J. 259, 276-77 (1978)). As the court observed, such information "can't come from anybody except the client or the attorney." From our review of the excerpts of the Lanes' depositions provided in the record, we have no reason to disagree with the court's finding.

Indeed, those excerpts contain limited substantive testimony. In its merits brief before us, plaintiff states that its decision to settle was a "business decision[] based upon the status of the underlying litigation, the malpractice errors admittedly committed by the defense attorneys[,] and the exposure to the plaintiff on the willful exaggeration claim." Defendants should not be forced to accept such assertions without an ability to challenge those claims or explore

---

[8] While we recognize that neither MARC nor Munday has filed a third-party action against Trautmann or Levitt, counsel represented that such a claim is being considered, pending receipt of the disputed discovery. Independent of any such putative action, as noted, the discovery is relevant as it directly addresses the proximate cause and damages issues.

A-0494-19T3

the bases for that "business decision."  See Wolosoff, 196 N.J. Super. at 567 (stating that a plaintiff should not be permitted to "divulge whatever information is favorable to its position and assert the privilege to preclude disclosure of . . . detrimental facts").

III.

Finally, plaintiff contends the court committed error when it ordered the Lanes re-deposed.  Specifically, plaintiff argues that defendants "have deposed the plaintiff's principals and were permitted to make full inquiry as to the reasons as to why the underlying matter was settled."  We disagree.

Rule 4:10-1 sets forth the permissible modes of discovery in a civil suit, including oral deposition testimony, and further provides that "[u]nless the court orders otherwise under [Rule] 4:10-3, the frequency of use of these methods is not limited."  Rule 4:10-3 in turn provides that "[o]n motion by a party . . . from whom discovery is sought, the court, for good cause shown . . . may make any order that justice requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense."

Here, the court properly allowed the Lanes to be deposed for a second time regarding the underlying litigation.  As noted, at the initial depositions of the Lanes, plaintiff's counsel objected to various lines of questioning, effectively

21

thwarting any substantive discussion of the reasons for the settlement of the underlying litigation. By way of example only, plaintiff's counsel precluded defendants' counsel from inquiring into the following areas: 1) "Did lawyers at Levitt, LLP recommend that [plaintiff] settle this claim?"; 2) "Prior to the settlement, had [plaintiff] already retained Mr. Trautmann?"; and 3) "Do you recall that Mr. Trautmann was asked to assist in trying to settle the [underlying] case?" Had these lines of inquiry been allowed to go forward, defendants would likely have been able to discover evidence relevant to their defenses against plaintiff's legal malpractice claim.

Moreover, plaintiff does not argue that the Lanes, by submitting to a second deposition limited to the underlying litigation, would suffer "annoyance, embarrassment, oppression, or undue burden or expense." R. 4:10-3. Absent good cause preventing a second deposition, which we assume can be completed expeditiously in light of the court's order limiting the scope of the depositions to the underlying litigation and related settlement, the court properly permitted the Lanes to be re-deposed.[9]

---

[9] We note that in its August 16, 2019 oral decision, the court stated that it was "not suggesting [defendants] can depose the attorneys at all . . . ." In the court's October 10, 2019 order, however, it denied plaintiff's motion to quash a subpoena for the deposition of Weiss. On remand, we leave it to the trial court

22

IV.

Our directions on remand are limited to ensuring that plaintiff produce only those relevant attorney-client communications that relate to Trautmann's and Levitt's limited involvement in the later stages of the underlying litigation and settlement.  In this regard, it is clear from the trial court's reference to the "underlying litigation" in its August 16, 2019 order and more specific reference to the "negotiation process with A&P" in its statement of reasons accompanying its October 10, 2019 order, that the relevant attorney-client communications at issue relate to that discrete time period and event.  We do not understand those materials to be extensive.  Prior to any production, the court shall conduct a careful in camera inspection of the aforementioned documents to ensure that no other privileged communications are disclosed.  See Payton, 148 N.J. at 550. With these safeguards in place, we discern no adverse public policy consequences, or any "chilling effect" on the willingness of attorneys to serve as successor counsel, will ensue.

---

to determine in its discretion whether further depositions of plaintiff's other successor counsel are appropriate.

To the extent we have not addressed any of plaintiff's arguments it is because we concluded they lacked sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed as modified.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0494-19T3