773 A.2d 1209 (2001)
340 N.J. Super. 155
LaBRACIO FAMILY PARTNERSHIP, Plaintiff,
v.
1239 ROOSEVELT AVENUE, INC. Michael Sevdalis, Evdoxia Sevdalis, Defendants/Third-Party Plaintiffs,
v.
Gary A. Kroop, Gary A. Kroop, P.A., Desmond R. Abazia, Desmond R. Abazia, P.C., 1239 Roosevelt Avenue, Inc., and John Zervas, Third-Party Defendants, and
Gary A. Kroop, Gary A. Kroop, P.A., Desmond R. Abazia, Desmond R. Abazia, P.C., Fourth-Party Plaintiffs-Respondents,
v.
Martin Burger, Fourth Party Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 2001.
Decided May 1, 2001.
*1210 Christopher J. Carey argued the cause for appellant, Martin Burger (Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys; Mr. Carey of counsel; John P. O'Toole, on the brief).
Robert J. Reilly, New Providence, argued the cause for respondents Gary A. Kroop and Gary A. Kroop, P.A. (Fitzpatrick, Reilly, Supple & Gaul, attorneys; Mr. Reilly of counsel; Michael D. Mezzacca on the brief).
Scott D. Samansky argued the cause for respondents Desmond R. Abazia and Desmond R. Abazia, P.C. (Fishman & Callahan, attorneys; Mr. Samansky of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
In this legal malpractice action, Martin Burger, the fourth-party defendant, appeals *1211 from a January 3, 2000 order of Judge Bryan D. Garruto finding Burger negligent and allocating to him liability for twenty-five percent of a $275,000 settlement. We affirm.
These are the circumstances. Thirdparty defendants Gary A. Kroop and Gary A. Kroop, P.A. (Kroop) represented Michael and Evdoxia Sevdalis (Sevdalises) in the sale of a diner in Carteret, New Jersey. Third-party defendants Desmond Abazia and Desmond Abazia, P.C. (Abazia) represented the buyer, John Zervas (Zervas). The closing took place in September 1992.
As part of the purchase price, Zervas was to assume a first mortgage to a party named LaBracio, and the Sevdalises were to take back a purchase money mortgage for $500,000 which was to be secondary to the LaBracio mortgage of approximately $125,000. At the closing, Abazia took the deed and Sevdalis mortgage to record them. Abazia did not immediately record the deed and mortgage, allegedly because Zervas did not have the sufficient monies for the payment.[1]
Zervas physically assaulted Abazia on November 23, 1992, and took the file, including the unrecorded Sevdalis mortgage. The mortgage remained unrecorded. By letter dated December 9, 1992, Abazia notified Kroop that Zervas had taken the file and that the Sevdalis mortgage remained unrecorded. Kroop responded with two letters dated December 15, 1992, one to Abazia and the other to Zervas. In his letter to Zervas, Kroop requested that his office be contacted immediately as to whether his client's mortgage remained unrecorded.
By letter dated December 18, 1992, Burger, who by then had become the lawyer for Zervas, wrote to Kroop stating in relevant part "... I have received the original Deed and Mortgage for recording...." Burger, however, did not record the deed or mortgage and returned the unrecorded deed and mortgage to Zervas. After the return of the deed and mortgage, Zervas recorded the deed, but not the Sevdalis mortgage. When Kroop became aware the Servdalis mortgage was still unrecorded, he recorded it on November 3, 1993.
In the meantime, Zervas, through a corporation named 1239 Roosevelt Avenue, Inc., granted mortgages on the property to mortgagees who were unconnected to the Sevdalises. Those mortgagees recorded their mortgages in July 1993 and August 1993. These new mortgage liens took priority over the Sevdalis mortgage, which was not recorded until November 1993. Under our recording statute, N.J.S.A. 46:22-1, New Jersey is a "race notice" state, Lieberman v. Arzee Mid-State Supply Corp., 306 N.J.Super. 335, 341, 703 A.2d 936 (App.Div.1997), generally according priority to those who record first without knowledge of earlier unrecorded conflicting claims and interests.
The Sevdalises commenced a legal malpractice action against Kroop and Abazia. The action eventually was settled pursuant to a consent judgment entered for $275,000 without allocation as to either Kroop or Abazia. All that was left was the fourth-party complaint made on behalf of Kroop and Abazia against Burger, which asserted that Burger was a joint tortfeasor liable for all or some of the settlement funds paid to the Sevdalises. See R. 4:8-1.
*1212 The remaining issue, then, was allocation of liability as among Kroop, Abazia and Burger. That issue was tried before Judge Garruto. Following trial, Judge Garruto found no dispute that the $275,000 was paid in accordance with the consent judgment on January 3, 2000, and allocated twenty-five percent of the liability to Burger, twenty-five percent to Abazia, and fifty percent to Kroop.
Burger contends in this appeal that the trial court "did not adequately address" the duty he allegedly owed and to whom the duty ran, that he had "no identifiable duty" to Sevdalis, Kroop, or Abazia, and that there was "no proximate cause between [his] actions" and the damages incurred. He further contends that the trial court's decision was against the weight of the evidence, failed to adequately consider the written submission and testimony of the experts, and ignored Abazia's testimony. Finally, Burger argues that the court erred when it declared a mistrial and awarded costs and fees to counsel for the fourth-party plaintiffs.
In his ruling, Judge Garruto stated:
The turning over of the original deed and mortgage to Mr. Kroopwhich Mr. Burger had for recording to the client knowing that this might defeat a valid mortgage held by Michael Sevdalis and Evdoxia Sevdalis, his wife, is in fact negligence and is a proximate cause of the loss sustained by the Sevdalis and eventually $275,000 settlement which was entered into by the fourth-party plaintiffs in this matter.
The trial judge also concluded:
[N]ow having concluded that Mr. Burger is negligent the question is how to allocate the responsibility and fault for this action.... I'm therefore now going to enter a judgment against Mr. Burger allocating ... 25 percent of the $275,000 settlement to him without interest and without costs.
This finding that the combined negligence of the three attorneys, Kroop, Abazia and Burger, resulted in the Sevdalis mortgage not being filed before intervening liens were recorded, is supported by adequate evidence in the record and we sustain it. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). Burger's statement that he was going to file the deed and mortgage was presumably an accurate declaration of his intention at the time he made it. His intention to file the deed and mortgage remained unfulfilled, however, and he returned the deed and mortgage to Zervas. Unfortunately for Burger, his statement was still being relied upon by Kroop since Burger had not advised him otherwise.
Burger asserts that the trial court did not thoroughly address the issue of duty to the Sevdalises and to Abazia and Kroop and that there was a lack of proximate cause between his actions and the resulting damages. These contentions are without merit. Under New Jersey law, the principles of negligence are well settled. The requisite elements of a negligence cause of action are: (1) the existence of a duty; (2) the breach of that duty; and (3) proximate causation of damages. Conklin v. Hannoch Weisman, 145 N.J. 395, 417, 678 A.2d 1060 (1996). In cases involving concurrent causes, the law requires consideration of the "substantial factor" test, which recognizes that a tortfeasor will be held answerable if its negligent conduct was a substantial factor in causing the injuries. Conklin, supra, 145 N.J. at 419, 678 A.2d 1060. In such circumstances, "[a]lthough the law of negligence recognizes that there may be any number of concurrent causes of an injury, `[n]evertheless, these acts need not, of themselves, be capable of producing the *1213 injury; it is enough if they are a "substantial factor" in bringing it about.'" Id. at 419-20, 678 A.2d 1060.
Here, the trial court properly found that Burger's duty arose from his letter to Kroop that he would file the deed and mortgage and that Burger breached his duty by failing to do so and by failing to report to Kroop or Abazia that he had not filed the deed and mortgage.
Indeed, New Jersey precedent recognizes the existence of duties owed not only to an attorney's client, but also to third parties such as the court and opposing counsel. Malewich v. Zacharias, 196 N.J.Super. 372, 482 A.2d 951 (App.Div. 1984). Attorneys may also owe such duties to an adverse party. Stewart v. Sbarro, 142 N.J.Super. 581, 593, 362 A.2d 581 (App.Div.), certif. denied, 72 N.J. 459, 371 A.2d 63 (1976); Tedards v. Auty, 232 N.J.Super. 541, 557 A.2d 1030 (App.Div.1989).
For example, in Malewich v. Zacharias, supra, a claim of misrepresentation was asserted against an attorney for an opposing party in a prior matrimonial suit. Zacharias, the attorney for the wife in the prior action, alleged that the husband's attorney, Auty, represented that he would call Zacharias if the case were not adjourned. Instead, Auty allegedly represented to the court that Zacharias would not appear, allowing default judgment to be taken against the wife. This legal malpractice suit was brought against Zacharias, who, in turn, filed a third-party complaint against Auty seeking damages. We noted that, as a member of the bar, Auty should know that an adversary might reasonably rely on representations made to him and that he owed a duty of good faith. We held that a breach of that duty can render the attorney liable to opposing counsel for all or part of a claim advanced by the opposing client in a malpractice action. Id. at 376, 482 A.2d 951. We noted as well that there are situations in which "an attorney may be liable to a person who does not stand in an attorneyclient relationship" and concluded that "it should come as no surprise to any attorney who has read the Disciplinary Rules that a misrepresentation made to another member of the bar, the reliance upon which has subjected such member to potential civil liability, can result in an award of damages." Id. To be sure, Malewich involved a knowing misrepresentation, whereas Burger's statement about recording the mortgage presumably was not. Nevertheless, Burger's statement must have been intentional, even if not fraudulent, and the one relying on it would have been equally harmed, whether it was fraudulent or not. We are persuaded that it is entirely reasonable in apportioning liability in this case to focus on the intentional nature of the statement rather than on a further intent, which we assume was wholly absent here, to mislead.
In Petrillo v. Bachenberg, 139 N.J. 472, 655 A.2d 1354 (1995), our Supreme Court approved some of our rulings in which attorneys were found to "owe a limited duty in favor of specific non-clients." 139 N.J. at 479-80, 655 A.2d 1354 (discussing R.J. Longo Constr. Co. v. Schragger, 218 N.J.Super. 206, 209-10, 527 A.2d 480 (App. Div.1987); Albright v. Burns, 206 N.J.Super. 625, 632-33, 503 A.2d 386 (App.Div. 1986); Stewart v. Sbarro, supra, 142 N.J.Super. at 593, 362 A.2d 581). In Petrillo, a buyer of real property alleged that the seller's attorney made a negligent misrepresentation by not providing complete information about the results of percolation tests conducted on the property. In determining that the seller's attorney owed a duty to the buyer, the Court "recognize[d] that attorneys may owe a duty of care to non-clients when the attorneys *1214 know, or should know, that non-clients will rely on the attorneys' representations and the non-clients are not too remote from the attorneys to be entitled to protection." Id. at 483-84, 655 A.2d 1354. The Court said that the existence of a "duty to a non-client third party [in these circumstances] depends on balancing the attorney's duty to represent clients vigorously, Rules of Professional Conduct, Rule 1.3 (1993), with the duty not to provide misleading information on which third parties foreseeably will rely, Rules of Professional Conduct, Rule 4.1 (1993)." Id. at 479, 655 A.2d 1354; see also Malewich, supra, 196 N.J.Super. at 376-77, 482 A.2d 951.
Burger's contentions, moreover, fail to give proper recognition to the operation of the Comparative Negligence Act (Act), N.J.S.A. 2A:15-5.1 to -5.3, which requires a trier of fact to translate common liability of joint or concurrent tortfeasors, including the plaintiff, into a percentage of causal fault that contributed to the plaintiff's injuries. Bencivenga v. J.J.A.M.M., Inc., 258 N.J.Super. 399, 609 A.2d 1299 (App. Div.), certif. denied, 130 N.J. 598, 617 A.2d 1220 (1992). Specifically, N.J.S.A. 2A:15-5.1 provides:
Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought or was not greater than the combined negligence of the persons against whom recovery is sought. Any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering.
Kroop and Abazia's claims that Burger was negligent, and that the negligence proximately contributed to the loss, required the trial judge to apportion the total negligence among all of the parties found liable. The apportionment made by the trial judge accords with the Act, under which a plaintiff may recover if he or she is not more than fifty percent responsible for his or her own injuries. Comparative negligence principles allocate damages between two or more parties at fault in causing harm. N.J.S.A. 2A:15-5.1 to -5.2.
To apportion liability under the Act, the fact-finder should compare the fault of all parties whose negligence was a proximate cause of the plaintiff's injuries. Campione v. Soden, 150 N.J. 163, 695 A.2d 1364 (1997). The Act requires the factfinder to determine "the extent, in the form of a percentage, of each party's negligence or fault," in all negligence cases, including "professional malpractice." N.J.S.A. 2A:15-5.2. The system of comparative fault is based on "a policy of individual responsibility" for voluntary behavior. See Tose v. Greate Bay Hotel & Casino, Inc., 819 F.Supp. 1312, 1315 (D.N.J.1993).
Here, Judge Garruto compared the fault of Kroop, Abazia and Burger and determined the extent, in the form of a percentage, of each one's fault. He found Kroop to be fifty percent at fault, Abazia to be twenty-five percent at fault and Burger to be twenty-five percent at fault. This approach applied the Act in a wholly appropriate way.
In our view, then, there was a more than sufficient basis in the evidence and under the law to find that Burger's failure to record the mortgage was a breach of duty warranting the imposition of the liability that the trial court imposed on him. With respect to proximate cause, we note that if Burger had recorded the documents there would have been no intervening liens. The Sevdalises would have possessed *1215 a purchase money mortgage with priority over the other mortgages and interests that eventually intervened and were the basis of the settlement payment to the Sevdalises. Burger's failure to record the mortgage, therefore, was a substantial factor in proximately causing the damages sustained by the Sevdalises, for which Kroop and Abazia were also found responsible. Other factors, such as the negligence of Kroop and Abazia, which no one disputes on this appeal, as well as the actions of Zervas, do not cancel out Burger's negligence and its relationship to the damages sustained.
Burger also contends the trial court's decision was against the weight of the evidence. It is well established, however, that "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort v. Investors Ins. Co., supra, 65 N.J. at 484, 323 A.2d 495. Moreover, although Burger argues that the trial court failed to consider adequately the written submissions and testimony of the experts, the weight to be given to the evidence of experts is within the competence of the fact-finder. See Borough of Wildwood Crest v. Smith, 235 N.J.Super. 453, 563 A.2d 73 (Law 1988). Here, Judge Garruto was presented with contradictory expert opinions. A review of the trial court's decision clearly shows that Judge Garruto considered the expert opinions at issue. Specifically, Judge Garruto discussed the expert reports and adopted the evidence and opinion of Kroop's expert, Gary L. Falkin, Esq., in finding Burger negligent.
In both his report and testimony, Falkin points up Burger's role in the recordation problem, explains how case law strongly supports the proposition that Burger owed a duty to the Sevdalises, Kroop and Abazia, and illustrates how Burger deviated from the standard of care and how that deviation was a proximate cause of damages sustained. We are satisfied that there is ample support in the record for the trial court's acceptance of the principles in Falkin's report when finding Burger negligent. Rova Farms Resort v. Investors Ins. Co., supra, 65 N.J. at 484, 323 A.2d 495.
We have carefully considered each of appellant's remaining contentions and as to them we affirm without a written opinion because each is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
The order appealed from is affirmed.
NOTES
[1] Notwithstanding this explanation, the closing statement from the transaction reflects that the purchaser was given a credit of $3,075 for the real estate transfer tax paid by the seller, including a charge to the buyer of $100 for the fee to record the deed and mortgage. These funds apparently were never paid at or before closing.