# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3548-22

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

      Plaintiff-Respondent,

v.

N.D.,[1]

      Defendant-Appellant,

and

T.A., a/k/a B.F.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.D.,

      Minor-Respondent.

_____

---

[1] We use initials for the parties to protect their privacy in accordance with Rule 1:38-3(d)(12) and N.J.S.A. 9:6-8.10a(a).

Submitted January 17, 2024 – Decided February 27, 2024

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FG-20-0024-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Adrienne Marie Kalosieh, Assistant Deputy Public Defender, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Julie Beth Colonna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Neha Gogate, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

N.D. appeals from the June 30, 2023 judgment terminating her parental rights to J.D. We previously considered this matter and left intact the trial court's determinations on prongs one, two and the first part of prong three.[2]

---

[2] "[T]o terminate parental rights, the New Jersey Division of Child Protection and Permanency (Division) must prove by clear and convincing evidence all four prongs of the 'best interests' test set forth in N.J.S.A. 30:4C-15.1(a)." N. J. Div. of Child Prot. & Permanency v. D.C.A., 256 N.J. 4, 8 (2023). The first prong is whether "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship," N.J.S.A. 30:4C-

N.J.S.A. 30:4C-15.1(a); N. J. Div. of Child Prot. & Permanency, v. N.D., Nos. A-1321-21 and A-1588-21 (App. Div. May 25, 2023) (slip op. at 32). We remanded for the trial court to reconsider the analysis of the second part of the third prong and the fourth prong under N.J.S.A. 30:4C-15.1(a)(3)-(4). Having considered the arguments in light of the record and applicable legal standards, we affirm.

In our prior opinion we detailed the facts in this matter. Since we write for the parties, we need not fully repeat the facts herein. We note that N.D. has a history of bipolar disorder, schizophrenia, anxiety, and panic disorder. She requires daily assistance to function due to an intellectual delay. Three days after J.D.'s birth, the Division filed a verified complaint for custody, care, and supervision of J.D. The court granted the Division custody of J.D. upon finding N.D. had significant mental health issues that prevented her from safely parenting J.D. The Division initially placed J.D. in a non-relative resource home

---

15.1(a)(1); the second prong is whether "[t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm," N.J.S.A. 30:4C-15.1(a)(2); and the first part of prong three is whether "[t]he [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home . . . ." N.J.S.A. 30:4C-15.1(a)(3).

A-3548-22

and subsequently, about a month after her birth, placed her with T.C., N.D.'s first cousin. J.D. has been with T.C. ever since.

Upon remand, the trial judge listened to T.C.'s prior testimony[3] and conducted his own hearing where had the opportunity to observe her testify and demeanor in person in the courtroom. He found her testimony "sincere and credible." He observed that she: was "quite clear" in her understanding of the differences between Kinship Legal Guardianship (KLG) and adoption; understood N.D.'s rights under either scenario; and held the opinion that "adoption was the only option she was interested in pursuing."

The judge noted T.C. remained steadfast in her quest for adoption because: (1) the relationship between N.D. and T.C. went from "good," at the time of initial placement, to "chaotic"; (2) T.C. was "exasperated" by N.D.'s "irrational behaviors toward her and J[.D.]"; (3) T.C. perceived N.D. as believing T.C. was not an "ally" and, instead, an "enemy"; and (4) T.C. was "unwilling to tolerate" being N.D.'s "verbal punching bag."

Moreover, he observed that T.C. thought N.D. made false promises to J.D. including: (1) J.D.'s room was ready; (2) J.D. was coming home next week; and (3) J.D was coming home soon; despite those promises having no "basis in truth

---

[3] The remand judge was not the judge who initially tried the matter.

or reality."  The judge credited T.C.'s opinion that N.D.'s "unrealistic beliefs would have only resulted in [her] having to [go] to court repeatedly," something T.C. "was unwilling to do because it was contrary to what she felt w[as] in J[.D.]'s best interests."

In addition, the judge credited the Division's expert's testimony that N.D.'s conflicts with T.C. were so magnified that T.C. would use others as buffers during visits between N.D. and J.D.  The judge noted the expert expressed concern that KLG would expose J.D. to the intense conflict between N.D. and T.C.

Further, the judge credited the Division's expert's opinion that N.D. would "not be able to parent [J.D.] now or at any time in the foreseeable future, and probably never."  Indeed, the judge concluded J.D. could not adequately meet her own needs, let alone J.D.'s needs.  He found N.D. unable to satisfy J.D.'s needs for "permanency and stability."

The judge noted the Division's expert conducted bonding evaluations of N.D. and J.D., and T.C. and J.D.  The judge credited the expert's observations and opinion that, as and between N.D. and J.D., J.D.:  (1) had "absolutely no attachment to" N.D.; (2) "did not view [N.D.] as a maternal figure"; (3) "would

suffer little to no harm if her relationship with [N.D.] were to be severed"; and (4) any harm caused by termination could be mitigated by T.C.

Further, the judge credited the expert's observations and opinion that, as and between J.D. and T.C., J.D.: (1) "would suffer great harm if her meaningful bond with [T.C.] was severed"; (2) "perceive[d T.C.] as her psychological parent and was extremely attached to her"; and (3) would have her "basic needs" met and would have a "stable and loving home" with T.C.

Ultimately, finding KLG was not an alternative to adoption and termination of N.D.'s parental rights to J.D. would not do more harm than good, the judge entered a judgment terminating N.D.'s parental rights to J.D.

N.D. raises the following issues on appeal:

POINT I.

THE REMAND COURT ERRED TO HOLD DCPP OFFERED SUFFICIENT PROOF THAT TERMINATION WOULD DO NO MORE HARM THAN GOOD SUFFICIENT TO MEET PRONG FOUR AND GAVE DR. KANEN'S PRIOR OPINION UNDUE WEIGHT.

POINT II.

EVIDENCE THAT T.C. PREFERS ADOPTION OVER KLG, NO MATTER HOW CLEAR, DOES NOT SATISFY DCPP'S CLEAR AND CONVINCING BURDEN TO SHOW TERMINATION IS IN J.D.'s BEST INTERESTS.

A-3548-22

A.   The termination statute does not mention caregiver preference when requiring the court consider alternatives to termination.

B.  Without expert evidence that continued parental contact would harm a child, a testimonial proffer of inconvenience to the caregiver does not meet DCPP'S clear and convincing burden to terminate parental rights.

More particularly, as to the second part of prong three, N.D. argues the judge was "uninformed and unprepared to draw legal conclusions as to whether alternatives to termination of parental rights exist."  She contends he "for[sook] his parens patriae power and hand[ed] off the responsibility to consider[] alternatives to [the Division] the very party who is to petition for the relief of" TPR.

N.D. also contends, with respect to prong four, the trial judge erred because:  (1) the Division "failed to show termination of parental rights was necessary for J.D. to achieve permanency" and instead established termination was necessary "only to avoid inconvenience" to T.C.; (2) there was no evidence "of animosity or irrational behavior with or toward J.D."; (3) he gave impermissible weight to the Division's expert's opinion; (4) the "harm of separation [from T.C.] is a red herring, because KLG does not require or

7

envision any separation from" T.C.; and (5) he "punish[ed] N.D. for being, and acting, mentally ill."

Our scope of review in appeals from orders terminating parental rights is limited. N.J. Div. of Child Prot. & Permanency v. T.D., 454 N.J. Super. 353, 379 (App. Div. 2018). "[W]e apply a deferential standard in reviewing the family court's findings of fact because of its superior position to judge the credibility of witnesses and weigh the evidence . . . ." N.J. Div. of Child Prot. & Permanency v. JR-R., 248 N.J. 353, 368 (2021) (internal citations omitted). In such cases, we will generally uphold the trial court's factual findings, so long as they are "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). Such a decision should only be reversed or altered on appeal if the trial court's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002) quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)).

Moreover, as "[t]he factfinder, [the judge] may accept some of [an] expert's testimony and reject the rest." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001) (citing Todd v. Sheridan, 268 N.J. Super. 387, 401

(App. Div. 1993)). "[T]he weight to be given to the evidence of experts is within the competence of the" judge. LaBracio Fam. P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 165 (App. Div. 2001).

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Under prongs three and four, the State must prove by clear and convincing evidence each of the following:

(3) [T]he court has considered alternatives to [TPR]; and

(4) [TPR] will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a).]

Under the second part of the third prong, the judge considered whether KLG could provide an "alternative[] to termination of parental rights." N.J.S.A. 30:4C-15.1(a)(3). KLG, "[u]nlike a judgment terminating parental rights, . . . does not sever the legal relationship between the child and the parent." R.G., 217 N.J. at 558. For instance, "the birth parent of the child retains the right to visitation or parenting time with the child, as determined by the court," N.J.S.A. 3B:12A-6(e)(4); and can apply to have the child returned, N.J.S.A. 3B:12A-6(f).

"The decision of a resource parent to choose adoption over KLG must be an informed one." N.J. Div. of Child Prot. & Permanency v. M.M., 459 N.J. Super. 246, 260-61 (App. Div. 2019) (citing N.J. Div. of Youth & Fam. Servs. v. H.R., 431 N.J. Super. 212, 232-33 (App. Div. 2013)). "[T]he caregiver must be fully informed of the potential benefits and burdens of KLG before deciding whether he or she wishes to adopt." Id. at 263. "The caregiver's consent to adopt should be . . . unconditional, unambiguous, and unqualified." Id. at 264. The caretaker does not act "as the 'ultimate decision-maker,'" id. at 262; but their "preference between the two alternatives should matter," id. at 263.

In conducting his analysis, the judge was satisfied T.C. understood the differences between KLG and adoption and noted she "repeatedly and unequivocally expressed her desire to adopt." He assessed T.C.'s willingness to petition to be a KLG "guardian," and therefore whether KLG was an alternative to termination. Moreover, the judge's consideration of the interaction between N.D. and T.C. was essential, considering N.D.'s continued right to visitation or parenting time with J.D. under KLG. Finally, the judge's consideration of N.D.'s "false promises," made with no "basis in truth or reality," and T.C.'s concern with having to repeatedly go to court was reasonable, considering N.D. would retain the right to apply to have J.D. returned.

A-3548-22

We are satisfied the judge independently considered alternatives to TPR, and determined there were none. The judge's findings are amply supported by competent evidence in the record and his legal conclusion is unassailable.

Under the fourth prong, the analysis is whether "[TPR] will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The fourth prong, serves as "a 'fail-safe' inquiry guarding against an inappropriate or premature termination of parental rights." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 453 (2012) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 609 (2007)).

> [T]he fourth prong of the best interests standard cannot require a showing that no harm will befall the child as a result of the severing of biological ties. The question to be addressed under that prong is whether, after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with [the child's] natural parents than from the permanent disruption of [the] relationship with [the child's] foster parents.
>
> [In re Guardianship of K.H.O., 161 N.J. 337, 355 (1999).]

In N.J. Div. of Child. Prot. & Permanency v. D.C.A., 256 N.J. 4, 26-28 (2023), the New Jersey Supreme Court reiterated the importance of considering evidence of the bond between child and resource parents under the fourth prong. "[T]o satisfy the fourth prong, the State should offer testimony of a 'well

qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation' of the child's relationship with both the natural parents and the foster parents." M.M., 189 N.J. at 281 (quoting In re Guardianship of J.C., 129 N.J. 1, 19 (1992)).

Here the judge determined that N.D. is unable, now or in the future, to parent J.D. and N.D. does not offer J.D. permanency. In contrast, he found T.C. provides J.D. a sensitive, caring and nurturing environment and has incorporated J.D. into her family unit.

Relying on the Division expert's bonding evaluation, the judge found absolutely no attachment between N.D. and J.D. and any harm in terminating their relationship could be mitigated by J.D.'s strong relationship with T.C. In turn, he found J.D. perceived T.C. as her psychological parent to whom she was extremely attached; and J.D. would suffer great harm if her meaningful bond with T.C. was severed. The judge's finding that termination of N.D.'s parental rights would not do more harm than good, is amply supported in the record and his legal conclusion is indisputable.

Any remaining arguments raised by N.D. are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-3548-22