**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3233-22

MICHAEL GRECO,

    Plaintiff-Appellant,

v.

TOWNSHIP OF EAST WINDSOR,

    Defendant-Respondent.

_____

Argued June 4, 2025 – Decided July 25, 2025

Before Judges Marczyk, Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1004-21.

Michael P. DeRose argued the cause for appellant (Crivelli, Barbati & DeRose, LLC, attorneys; Michael P. DeRose, on the briefs).

Ellen M. Horn argued the cause for respondent (Ruderman & Roth, LLC, attorneys; Ellen M. Horn, on the brief).

PER CURIAM

Plaintiff Officer Michael Greco appeals from the May 16, 2023 trial court order affirming, as modified, a hearing officer's findings and recommendation for his removal. Because we conclude the trial court's decision was not arbitrary, capricious, or unreasonable and supported by the credible evidence in the record, we affirm.

On February 7, 2020, Officer Greco, of the East Windsor Township Police Department (EWPD), was served with a Preliminary Notice of Disciplinary Action (PNDA). According to the PNDA,

> Officer Greco is a patrol officer with the E[WPD] since September 5, 2012. On or about November 11, 2019, at about 5:30 a.m., New Jersey State Police responded to a motor vehicle accident involving Officer Greco in East Amwell, New Jersey. Officer Greco, who was off duty, recklessly operated his personal motor vehicle, ultimately causing his vehicle to collide with a tree. As a result of the accident, Officer Greco suffered injuries including a broken arm. He caused significant damage to his vehicle, among other property damage.

> Upon his arrival on the scene, Trooper Z.W. Andren noticed a strong odor of alcohol emanating from Officer Greco's breath and observed physical manifestations of alcohol intoxication. Officer Greco made several untruthful statements to the New Jersey State Police. He told Trooper . . . Andren, among other things, he was not the operator of the vehicle. He relayed that he and a friend were returning from drinking at a bar in New Hope, Pennsylvania; his friend crashed the vehicle and left the scene. Based on the evidence, the New Jersey State Police determined

Officer Greco was the operator and sole occupant of the vehicle.

The New Jersey State Police issued three . . . summonses to Officer Greco: (1) Driving While Intoxicated (N.J.S.A. 39:4-50); (2) Reckless Driving (N.J.S.A. 39:4-96); and (3) Unsafe Lane Change (N.J.S.A. 39:4-88B).

Testing revealed that Officer Greco's blood alcohol content exceeded the legal limit.

Additionally, Officer Greco made untruthful statements regarding the motor vehicle accident to the E[WPD] and failed to timely inform the E[WPD] of the summonses issued by the New Jersey State Police. On November 11, 2019, the day of the accident, Officer Greco informed the E[WPD], specifically, Sergeant Philip Melhorn, he needed to take sick time because he broke his arm in an accident. On or about November 12, 2019, the day after the accident, Officer Greco represented to his direct supervisor, Sergeant Paul Wille, that he was a passenger in the motor vehicle accident. Officer Greco did not inform the E[WPD] that he was the sole occupant of his vehicle, he caused it to strike a tree and he received three summonses issued by [the] New Jersey State Police until November 15, 2019, four . . . days after the accident.

The PNDA alleged that Officer Greco violated the following rules and regulations of the EWPD:

3.1 Police Officers Shall:

1. Abide by all rules, regulations and department procedures and directives governing police officer employees.

3

6. Conduct themselves in accordance with high ethical standards, on and off duty.

4.1.3 Obedience to Laws and Rules. Employees shall obey all laws, ordinances, rules, policies, and procedures and directives of the department. . . .

4.1.4 Withholding Information. Employees shall report any information concerning suspected criminal or improper activity of those employed by the E[WPD], and others. . . .

4.3.3 Reports. No employee shall knowingly falsify any official report or enter or cause to be entered any inaccurate, false or improper information on records of the department. . . .

4.7.6 Identification as Police Officer

b. Any officer, while off[-]duty, who has contact with another law enforcement agency in any official capacity, excepting minor motor vehicle infractions, shall notify their Commanding Officer, through the proper chain of command, of the circumstances surrounding said encounter. Such notification shall be made as soon as practical after the contact. . . .

4.12.6 Truthfulness. Employees are required to be truthful at all times whether under oath or not. . . .

6.1.1 Employees, regardless of rank, shall be subject to disciplinary action, according to the nature or aggravation of the offense, for:

a. committing an offense punishable under the laws or statutes of the United States, the

A-3233-22

State of New Jersey or any other State, or municipal ordinances;

. . . .

II.   By engaging in the conduct set forth in the specifications above, Officer Greco is also charged with:

Misconduct, see N.J.S.A. § 40A:14-147;
Conduct unbecoming a public employee;
Untruthfulness;
Other sufficient cause for discipline.

The PNDA advised that "[t]he following disciplinary action may be taken . . . [r]emoval . . . pending a hearing."

The matter was heard by a hearing officer.  The EWPD produced Trooper Andren, Lieutenant Cory Paieda, Lieutenant Jeffrey Dorrian, Sergeant Melhorn, and Sergeant Wille.  Officer Greco did not testify or summon any witnesses.

In its written memorandum of decision, the hearing officer detailed some of the testimony.  The hearing officer noted that Trooper Andren:  (1) described that "Officer Greco continually asked [him] to look in the trunk of the vehicle. Located in the trunk of the vehicle was Officer Greco's police hat along with his patrol bag.  Officer Greco eventually advised that he was a member of the E[WPD]"; (2) "concluded that Officer Greco was the driver of the vehicle because he did not have any other evidence to indicate that someone else was

5

driving"; (3) "believed that Officer Greco was being untruthful about being the passenger in the vehicle"; and (4) stated he served Officer Greco with the summonses by showing him where they were being placed in Officer Greco's patrol bag while he was at the hospital.

Further, the hearing officer noted Lieutenant Paieda testified that on November 16, 2019, he received a phone call from Lieutenant Dorrian. Lieutenant Dorrian advised that the day prior Officer Greco advised him about the three summonses "in relation to a single car motor vehicle accident in which [Officer] Greco was the sole occupant." Lieutenant Paieda "believed, at that time, that [Officer] Greco . . . was the passenger of the vehicle." In addition, Lieutenant Paieda met with Lieutenant Eric Lion, who told him that Officer "Greco advised S[ergean]t . . . Wille . . . that [he] was the passenger of the motor vehicle." Further, Lieutenant Paieda met with Sergeant Melhorn who advised that Officer Greco called him and indicated he would be out with a broken arm that required surgery. Officer Greco did not elaborate on how he was injured or indicate that he had contact with another law enforcement agency and received summonses related to the accident.

In addition, Lieutenant Paieda met with Sergeant Wille, who had spoken with Officer Greco, as friends, and Officer Greco said "he was the passenger in

6

a motor vehicle accident." Officer Greco also stated that "police were involved . . . only to tow away the vehicle." Officer Greco "did [not] advise that he was issued summonses."

Sergeant Melhorn's and Sergeant Wille's testimony "was based primarily on [their] memorialized statements provided to L[ieutenan]t Paieda."

Lieutenant Dorrian testified that he received a call from Officer Greco on November 15, 2019. Officer Greco "advised that he was the sole occupant of a single motor vehicle accident" and had contacted the lieutenant "as soon as he learned that he was receiving the summonses."

The hearing officer

> conclude[d] that Officer Greco was the operator of his motor vehicle on the night of his accident. The vehicle involved in the crash was [Officer] Greco's personal vehicle and contained his belongings, including his work equipment. Moreover, despite Officer Greco's statements that a co-worker operated the vehicle, he was unable to identify this individual by name and provided no additional information with respect to this co-worker, other than to describe his own physical appearance. Most importantly, four . . . days after the accident, he advised the [EWPD] that he was the lone occupant of a single vehicle car accident. Therefore, the only rational outcome, considering these facts, is to conclude that Officer Greco operated the vehicle the night of the accident.
>
> As a result of this finding, I also conclude that Officer Greco's statements to the [t]roopers were

untruthful. In addition, Officer Greco's statements to the [EWPD] that he was the lone occupant of a single vehicle accident were intentionally misleading. Officer Greco had numerous opportunities to advise the [EWPD] that he was the operator of the vehicle. Instead, he chose to cast doubt on his involvement in the accident so as to avoid discipline.

Officer Greco's actions portray the [EWPD] in a negative light and call into question his personal integrity and dependability. . . .

. . . .

Additionally, an analysis of progressive discipline must be addressed. To that end, Officer Greco does not have any prior disciplinary history with the [EWPD]. . . .

The doctrine is one of flexibility, "'not a fixed and immutable rule to be followed without question[,]' because 'some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record.'" [In re Stallworth, 208 N.J. 182,] 196 [(2011)] (quoting [In re] Carter, . . . 191 N.J. [474,] . . . 484 [(2007)]). For this reason, "progressive discipline is not necessary 'when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest.'" Id. at 197 (quoting [In re] Herrmann, . . . 192 N.J. [19,] . . . 33 [(2007)]).

. . . .

Here, I find the officer's actions to be so severe that the maximum penalty sought by the [EWPD] is

8

> justified even in the absence of progressive discipline. Based upon the foregoing, and after carefully considering all of the evidence admitted and testimony elicited, I recommend that Officer Greco be terminated.
>
> [(Ninth alteration in original).]

Officer Greco was served with a Final Notice of Disciplinary Action. All charges were sustained, and he was terminated.

Officer Greco sought review in the Superior Court.[1] The trial court held a three-day bench trial. The parties supplemented the record with testimony from Dr. Gary Lage, an expert in the field of toxicology, on behalf of Officer Greco; and Dr. David O'Connell, an expert in psychology, on behalf of the EWPD. In addition, Trooper Andren, Lieutenant Paieda, Lieutenant Dorrian, Sergeant Melhorn, and Sergeant Wille testified. Officer Greco provided testimony on his own behalf.

The court found Officer Greco's testimony was "inconsistent" and not credible. The court noted the officer testified "that he has no present memory of the accident." "Yet, he relayed [to some] . . . that he was a passenger in a motor vehicle accident . . . [and to others] that he was the sole occupant or

---

[1] In accordance with N.J.S.A. 40A:14-150, "[t]he court shall hear the cause de novo on the record below and may either affirm, reverse or modify such conviction." Further, "[e]ither party may supplement the record with additional testimony subject to the rules of evidence." Ibid.

driver."  The court concluded:  "[H]e can[]not have it both ways.  Either he had some memory of the incident and was untruthful when he told one group of his actions, or he had no memory and was untruthful when he averred—to either group—to being the passenger or the driver."

The court found Officer Greco's

> pattern of reversals troubling and sustain[ed] the findings as to Section 4.12.6.  In the same vein, incorporating the [h]earing[] [o]fficer's findings, th[e] [c]ourt f[ou]nd[ Officer] Greco to have violated the following E[WPD] Rules and Regulations as well: Section 3.1.3 . . .; Section 3.1.6 . . .; Section 4.1.3 . . .; Section 4.1.4 . . .; and Section 4.3.3 . . . .

The trial court dismissed the [EWPD]'s notification charge under Section 4.7.6(b).  The "[c]ourt f[ou]nd[] the testimony proffered by Dr. . . . Lage [regarding Officer] Greco suffering from AIA[2] in the earlier hours of November 11, 2019, to be credible."  The court noted, "Dr. Lage testified that alcohol affects the hippocampus and prevents translation from short-term to long-term memory."  Therefore, the "[c]ourt [wa]s satisfied that [AIA] present[ed] the basis for a defense as to why [Officer] Greco did not present the summonses to his department at an earlier opportunity."

---

[2]  Alcohol Induced Amnesia.

Also, the trial court did not make a finding that Officer Greco violated Section 6.11. The court noted, "the [m]unicipal [c]ourt did not reach the merits" regarding the summonses, the charges were dismissed, and there was a lack of evidence that Officer Greco "committed offenses punishable under New Jersey laws."

The trial court considered progressive discipline, noting Officer Greco had "only been [previously] lightly disciplined," but found Officer Greco's "pattern of untruthful statements" was "in and of itself severe enough to warrant dismissal."

On appeal, Officer Greco contends the trial court erred: (1) in finding AIA only presented a defense to "the delayed notification charge[]" because "it likewise would have served as an impediment to his ability to relate facts during his interaction with [the] troopers"; (2) in ruling that his "statement to S[ergean]t Wille" violated Sections 4.12.6 or 4.3.3 of the EWPD Rules and Regulations; and (3) "in its application of progressive discipline . . . thereby warranting a reversal of the removal and the imposition of a lesser penalty."

"An appellate court plays a limited role in reviewing the de novo proceeding." In re Phillips, 117 N.J. 567, 579 (1990). "[T]he court's 'function on appeal is not to make new factual findings but simply to decide whether there

was adequate evidence . . . to justify its finding of guilt.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Therefore, "unless the appellate tribunal finds that the decision below was 'arbitrary, capricious or unreasonable' or '[un]supported by substantial credible evidence in the record as a whole,' the de novo findings should not be disturbed." Ibid. (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980)).

"Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 437 (App. Div. 2016) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). "That is so because an appellate court's review of a cold record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand." Balducci v. Cige, 240 N.J. 574, 595 (2020).

The purpose of admitting expert testimony is to "assist the trier of fact to understand the evidence or to determine a fact in issue," N.J.R.E. 702, by presenting testimony "concern[ing] a subject matter that is beyond the ken of the average juror." Polzo v. Cnty. of Essex, 196 N.J. 569, 582 (2008). "The purpose of expert testimony is to assist, not bind, the factfinder." Matter of A.I., 303 N.J. Super. 105, 114 (App. Div. 1997). "A trial court is free to accept or

reject the testimony of either side's expert, and need not adopt the opinion of either expert in its entirety." Brown v. Brown, 348 N.J. Super. 466, 478 (App. Div. 2002). "[T]he weight to be given to the evidence of experts is within the competence of the fact-finder." LaBracio Fam. P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 165 (App. Div. 2001).

I.

Officer Greco argues the trial court erred because his AIA defense applied not only to "the delayed notification charge[]" but also to his interactions with the troopers. He contends "the principal untruthfulness allegation lodged by [the EWPD] in this matter was [his] . . . untruthful . . . respon[se to the t]roopers on the scene of the accident when he indicated that he was a passenger rather than the driver of the motor vehicle."

Greco asserts: (1) he had "compromised . . . cognitive abilities during his interaction with Trooper Andren"; (2) his "condition would have impacted his ability to relate facts to the troopers and understand things said to him"; and (3) his condition "inhibited his ability to relate facts to troopers that were developed during the period of AIA." He contends "if AIA impeded [his] ability to timely notify the [EWPD] of the charges, it likewise would have served as an

13

impediment to his ability to relate facts during his interaction with [the] troopers."

We conclude Officer Greco's argument is without merit. The trial court found, based on Dr. Lage's credible testimony, that AIA could "prevent[] translation from short-term memory to long-term memory." Therefore, the court concluded AIA "present[ed] a basis for a defense as to why [Officer] Greco did not present the summonses to . . . [EWPD] at an earlier opportunity."

However, the trial court was not bound to make that same finding regarding Officer Greco's untruthfulness. In this respect, the trial court noted: (1) "the [h]earing [o]fficer placed great emphasis on Trooper Andren's report and testimony . . . [that Officer] Greco made several conflicting statements at the scene"; (2) Officer Greco "appeared to have had the presence of mind to question if [Trooper] Andren's body camera was 'rolling'"; (3) Trooper Andren's belief that Officer "Greco wanted him . . . to know that [Officer] Greco was a police officer so that maybe [Trooper] Andren could give him a 'professional courtesy,' which [Trooper] Andren defined as 'sweeping (the incident) under the rug'"; (4) Officer Greco advised Sergeant Wille "he was a passenger"; and (5) "Lieutenant Dorrian relayed it 'was perfectly clear' from [his] conversation [with Officer Greco] that [Officer] Greco admitted he was the sole occupant of the

14

vehicle, i.e., the driver of the vehicle." In addition, the trial court found Officer Greco's statements to medical providers were "just as inconsistent."

The trial court noted Officer Greco "can[]not have it both ways." Officer Greco "[e]ither . . . had some memory of the incident and was untruthful when he told one group of his actions, or he had no memory and was untruthful when he averred—to either group—to being the passenger or the driver."

The trial court's findings and conclusions are ably supported in the record and will not be disturbed.

## II.

Officer Greco argues the trial court erred in using his statement to Sergeant Wille to sustain charges under Sections 4.12.6 and 4.3.3. Officer Greco contends he and Sergeant Wille "are close friends." He notes he asked the sergeant if they were speaking as friends or if the sergeant was speaking in his official capacity and was assured the conversation was between friends. Because it was a friendly conversation, Officer Greco states he was under no "obligation to even discuss the matter" and "[t]here could be any number of reasons [why he] responded in the manner he did."

Officer Greco acknowledges that had Sergeant Wille been acting in his supervisory capacity, he "would have unequivocally been under an obligation to

15

answer in a truthful manner."  However, he also notes that in that situation he would have been entitled to representation and other rights.  In addition, he contends "[t]he [EWPD]'s use of [his] statement to [Sergeant] Wille in this disciplinary matter [wa]s entirely inconsistent with the" Attorney General's Internal Affairs Policy and Procedures (IAPP).

The EWPD counters that Sergeant Wille responded to a question from Lieutenant Lion and relayed what Officer Greco told him about being "in a car accident as a passenger."  It asserts "[t]he conversation between Sergeant Wille and [Officer] Greco was not an investigatory interview during which [Officer] Greco was compelled to provide responses."  Under these circumstances, the EWPD contends Officer Greco's rights were not violated, nor was there a violation of the IAPP.

The trial court found Officer Greco's "conversation with . . . Sergeant [Wille] where he indicated he was a passenger in the vehicle, seemingly violate[d] Section 4.3.3."  However, the court found Officer Greco's "interaction with Lieutenant Dor[r]ian . . . [wa]s dispositive."

Therefore, the trial court gave Officer Greco's statement to Sergeant Wille some weight, but fully relied on Officer Greco's statement to Lieutenant Dorrian. There was nothing arbitrary, capricious, or unreasonable in this decision.

16

Officer Greco contends the trial court erred "in its application of progressive discipline." He asserts his "off-duty discussion" with his friend Sergeant Wille and having AIA, "would have . . . severely hampered" his "ability to convey meaningful facts to [the t]roopers." He asserts these are mitigating circumstances that do not warrant removal. He adds that "his disciplinary history was negligible, and he was a well-respected officer," and therefore "progressive discipline warrants a downgrading . . . to a suspension."

The trial court stated, "progressive discipline is not 'a fixed and immutable rule to be followed without question' because 'some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record,'" citing Stallworth, 208 N.J. at 196. The court considered Officer Greco's "several awards and letters of appreciation . . . and . . . [that Officer] Greco ha[d] only been [previously] lightly disciplined." Nevertheless, the court found his "pattern of untruthful statements . . . [wa]s in and of itself severe enough to warrant dismissal."

We are satisfied there is nothing arbitrary, capricious, or unreasonable concerning this conclusion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

17                                                                    A-3233-22